Good morning. May it please the court. Farbad Mouradani on behalf of Los Angeles County, the Department of Children and Family Services, and the Department of Mental Health. I'd like to reserve four minutes of my time, if that's okay. This appeal is not about whether the state of California or its counties who administer the foster care system should take care of our foster children. The answer to that question is emphatically yes. What this appeal is about is whether a federal judge should substitute his opinion for those of the other branches, state and local governments, and California's juvenile courts on how to accomplish that. The answer to that question is emphatically no. This action fails because the relief that plaintiffs have requested would not remedy the injuries they allege, is beyond the power of a federal court to grant, and would invade the province of California's juvenile courts who bear ultimate responsibility for the well-being of foster children. Starting with redressability. The irreducible minimum of standing requires a plaintiff to show that the relief they request will both remedy their individual injuries and is within the court's power to award, and neither of those applies here. Article 3 standing is based on a single basic idea, the separation of powers, and what is clear and the Supreme Court has said time and again is that federal courts have no jurisdiction to exercise general ongoing oversight over the other branches, and that is particularly true when that oversight would be as to discretionary budgeting and sociopolitical and economic decision making, which is precisely the case here. The administration of a foster care system is an incredibly complex exercise requiring painstaking decisions about the deployment of scarce resources, about the makeup, frequency, and kind of services to be provided, when, where, how, and to whom. These are decisions that are already made every single day by the legislature, by the Board of Supervisors, by the Department of Children and Family Services, people who have devoted their lives and careers to taking care of foster youth are grappling with these issues every single day and must make complex policy decisions about how to administer these systems. A federal judge can do no better than all of these groups combined, and it certainly doesn't have the power to substitute his judgment and take the entire foster care system and put it under federal court oversight for a period of time until the court is satisfied that the foster care system is good enough. These decisions are reserved for the other branches of government, and we are not lacking for guidance here. This court faced a similar issue in Juliana versus United States, where plaintiffs filed suit alleging that their health, their businesses, their properties were being damaged by the government's failure to address environmental change. Just like plaintiffs here, they sought a declaration that the government had violated the Constitution. Just like plaintiffs here, they sought an injunction requiring the government to prepare a plan to correct systemic failures to address these environmental changes. But in Juliana, there were other redressability issues of even if the climate change was caused by foreign countries, et cetera. I mean, there are other factors involved, at least based on that Ninth Circuit opinion. Yes, Your Honor, and those factors apply here as well. So the problem in Juliana was twofold. The first was that the court didn't have the power to grant the relief in the first place because any effective plan would require a federal court to make the very policy decisions that are reserved for the other branches. But the second problem was that even if that remedy were granted, it wouldn't actually be effective relief for the injuries that are asserted. We have that problem here, too. The reason we have that problem is there are several. The first is that there are multiple independent actors and independent decision makers who are not part of the lawsuit in front of Judge Cronstadt and could never be. The Supreme Court actually faced something very similar in Halin v. Burkine, where the plaintiffs challenged placement decisions made under the Indian Child Welfare Act. The plaintiffs were challenging those placement decisions, and the Supreme Court found that redressability was lacking because those placement decisions are made by state courts, and state courts weren't in front of the federal court, nor could they be, and those decisions are reserved for the state courts. We have the exact same issue here. Every single placement for a foster child is reviewed and approved by a juvenile court. There is a court order stamping its approval on the placement. How often are the juvenile courts reviewing the placement decisions? At a minimum, once every six months, but it can be much more frequent, and it can be as needed. Every foster child has appointed counsel whose entire job it is to look out for the child's needs and assess whether there are any deficiencies or if there are any gaps. If at any point that attorney determines that there is a cap, they can get in front of the juvenile court ordinarily within 24 hours, sometimes same day. So I have read the complaint several times. It's written at a very, very high level of abstraction. I've had a very difficult time trying to figure out precisely what it is that we want. So if maybe you can help me. So I understand that there are, one of the principal claims is that we are discriminating against these youth on the basis of their disabilities. Okay. Now why couldn't that be resolved by a district court? On the ADA claim, the allegation is that plaintiffs are not receiving placements that are in the least restrictive setting appropriate to their needs. That is a determination that the juvenile court makes every single day. The California Welfare and Institutions Code specifically requires the juvenile court to consider whether— And if one of the plaintiffs believed that they would not have been placed in the least restrictive setting, can that be raised to the dependency court? Absolutely. That is exactly what they're there for. All they have to do is talk to their attorney. The attorney will request what is called a walk-on. They will walk into the juvenile court and say, there is a problem with my placement. And it's not limited to least restrictive setting. It's any deficiency in the placement. It can be too far from school. It could be it's not a good fit. It could be I'm not getting the services I need. Every single injury that is—every single individual injury that is asserted in this complaint is precisely within the province of what the juvenile court exists to remedy. There is no gap here. And that is part of the problem. So we have some due process claims that claim that they're not being given notice at a hearing because there's been some kind of change in their circumstances for which they thought they were entitled to notice. Can that be handled by the court? Or does that have to be handled by an agency? And can any error there be remedied by the dependency court? Any error can be remedied by the dependency court. But on top of that, that is not something that a federal court can order because we run right into redressability again. The procedural due process claim, the one where plaintiffs are demanding notice and opportunity to be heard, and if you look at the complaint, paragraph 199, they're asking for a neutral arbiter to intervene and hold evidentiary hearings on this subject matter. That wouldn't remedy any of the injuries here because the procedural due process claim is asserted on behalf of foster youth who are renting from private landlords. Private landlords have unfettered discretion to decide who they're renting to. If it's just not a good fit, they can decide they don't want to rent to a particular person. Similarly, if a foster youth violates the rules of their placement, if they violate their lease, as occurred in this case, for example, Jackson K. had illicit drugs in his possession and was removed from his placement because of that, the landlord has their discretion to evict someone based on that. Ordering the county to hold hearings about it wouldn't accomplish anything. One, it wouldn't address the injury that's alleged, which is the loss of a placement. That's in the hands of the landlord. And two, it would utterly interfere with what the juvenile court is doing because if there now suddenly is this third additional branch, this neutral arbiter who is holding evidentiary hearings on whether or not that was appropriate, that inserts chaos into something that is within the purview of the juvenile court. Let me just ask you a procedural question. The district court certified this for our review and then after that permitted them to amend the complaint, so we have a second amended complaint. I've tried to look at both the second amended complaint and the first amended complaint to try to figure out what survives and what doesn't survive. Some things appear to have maybe been split into multiple claims. Is the second amended complaint going to be the operative complaint or the first amended complaint? The first amended complaint is the operative complaint. Let's walk through this. Plaintiffs filed their original complaint and then amended that as of right, so we have the first amended complaint. The county defendants moved to dismiss that complaint for lack of subject matter jurisdiction and extension and various other grounds, including failure to state a claim, and the court granted the motion for failure to state a claim in large part, but rejected the motion to dismiss for lack of subject matter jurisdiction, and all of that is encapsulated within the same order that is in front of you now. Plaintiffs subsequently purported to amend their complaint and the court had granted them leave to do so, but the court didn't have authority to grant that leave to amend because the court lacks jurisdiction from inception. This court held in Morongo, and it reiterated recently in the L.A. Alliance case in 2021 that if the court is lacking subject matter jurisdiction to begin with, which is the whole point of this appeal, which is what I am arguing to you now, then every one of its orders, including any of its orders granting leave to amend, are nullities because it didn't have authority to grant leave to amend in the first place. So if we affirmed the district court's order, then the district court would have the discretion to allow a second amended complaint? If you affirm that the court has jurisdiction? Right, if we just affirmed the district court across the board, so this would go back, it's going to go back for discovery and trial and further motions and summary judgment, at that point, the district court retains jurisdiction and could then admit the second amended complaint. Is that correct? It depends on what the amendment is for. So if we're just talking about factual allegations to fill out their causes of action, that would be fine. But if the amendment would be to bring about jurisdictional basis that didn't exist in the first place, then that is not allowed. Why not? I mean, the premise of the question is that we have affirmed, it's now back in the district court. Why doesn't the district court have authority to, actually had it already granted leave to amend on some claims, why can't the district court effectuate that? The district court can grant leave to amend, but the, you're right, if the court rules that the district court has subject matter jurisdiction to begin with, then it's kind of over and Judge Cromsack can grant leave to amend in his discretion. I just want to make sure I'm not missing something. The premise of the question as I understood it, which is a hypothetical, I get it, but I presume that the case goes back to the district court and at that point the district court does what it elects to do. Correct, yes. That's right. And the interesting thing is your answer to the question on appeal will itself resolve this purported mootness problem. Because if you find that the court lacks jurisdiction to begin with, then it also lacks the authority to grant leave to amend anyway, and it's not moot. If you find that the court had jurisdiction to begin with, then plaintiffs prevail on this appeal anyway, and the mootness question itself becomes moot. So we end up in the same place regardless, which is that the substance of this argument is before you, and that is what the court needs to rule on, regardless of whether or not the amendment itself was correct. Let me get to some of that substance. Let me be very clear to everybody. I have a degree of skepticism, which I think actually seems to me the district court may at least in part share, with regard to these broad institutional reform class actions. However, there are several of them that have proceeded through the system, and sometimes you can fairly argue that if you focus on all the individual trees, you lose the forest. That is, many of the complaints are not simply, well, in this case, the disability wasn't properly dealt with, but there is a systematic problem so that consistently that turns out to be the result because of some institutional problem. Again, acknowledging skepticism with regard to relief on the merits, why isn't there a less than what the complaint appears to seek, but still would successfully alleviate or abate some of the problems that are identified in the complaint? Your Honor, this court just held in Stockton v. Brown, a case that just came out two days ago, that it is not the judiciary's job to take up the mantle of imagining a scenario where subject matter jurisdiction might exist. The court takes the lawsuit that is presented to it, and actually, that is exactly what happened in Juliana. In Juliana, the court didn't sit there and imagine, is there some lesser version of the relief that is requested here that might potentially pass muster? Jurisdiction is inherently a threshold inquiry. Redressability must exist from the start. It is by intention inflexible and without exception because the most important question a judge faces in the beginning of a lawsuit is, is this a case or controversy? So the answer to the question presented to you is that this is not a case or controversy because the action that is before you now seeks relief that, one, doesn't remedy the injuries asserted, two, is beyond the power of a federal court to grant, and three, would invade the province of juvenile courts. And if I can briefly address the Younger Abstention question. The district court disagreed with us on Younger Abstention on one ground, which was that dependency cases are not civil enforcement proceedings. In our view, that is flat wrong. Moore v. Sims itself involved a dependency proceeding. That finding is incompatible with California case law. The district court's finding is, holding that you cannot view any particular aspect of a dependency case in a vacuum, that the entirety of the proceeding is one singular case that has to be all viewed together as interrelated hearings. It's incompatible with California statutes that say the dependency court can only retain jurisdiction if it determines that the specific reasons the jurisdiction arose in the first place, being abuse or neglect, and the concerns that are reflected in the criminal statutes persist. In other words, if a dependency case exists, there is still a civil enforcement proceeding aspect to it. And it is also incompatible with this court's ruling in Bristol-Myers Squibb v. Connors, where the court ruled that you don't look at the specific facts of a specific case and the specific interest in a specific case or the specific component of a specific case to determine whether or not it's a civil enforcement proceeding. You look at the general interest and the general class of proceedings that are at issue. The general class of proceedings at issue here are exactly the same class of proceedings that were at issue in Moore v. Sims. They are dependency cases, which the Supreme Court ruled are subject to younger abstention. And I'd like to reserve the rest of his time if that's okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Grant Davis Denny on behalf of Plaintiffs Appellees. I'd like to start just to clarify one thing about the history of the case. It was actually the case that the district court, when it issued the order that is up on appeal, it granted leave to amend. It gave plaintiffs 30 days to file their amended, their second amended complaint. Both parties stipulated to a short extension and then plaintiffs timely filed that second amended complaint months before the district court certified the 1292B petition. So I just wanted to clarify that fact. On mootness. It does seem a little odd and I understand the number of things flowing around, but the certification a substantial time later, without speaking to the question of what complaint we're supposed to be considering, does confuse things some. Though I understand your argument with regard to, well, what do you think we can properly entertain now? Well, I think one way to look at it is to say, let's assume that the younger abstention argument or the standing argument had merit. Obviously, if they don't, then there was no problem. I think everyone would agree with that. But let's assume that one of those two had merit. Then the question is, did the district court have authority to grant leave to amend to file the second amended complaint? So take Younger to begin with. The county's position is, no, the court didn't have that authority with respect to Younger because Younger is about a lack of jurisdiction. But the Supreme Court and this court have both made clear that that actually is not the case. Younger is about a decision not to exercise the jurisdiction that Congress conferred on the federal courts. So there's no reason why, even if the district court had found Younger's abstention appropriate, it wouldn't have granted leave to amend, particularly given the nature of the Younger issues here, where a lot of it's about how are the claims pledged. Does the district court allow this thing to play out, allow another motion to dismiss if the first motion to dismiss is now moved because there's now another complaint? I have to say, this seems very, very irregular. It certainly has sown a lot of confusion in my chambers. So I'm really struggling to figure out what are we supposed to do with this second amended complaint? Does it cure problems that I think I might identify? If it doesn't, if it's just the same things but kind of redone, everything's just been renumbered, then I'm not sure what I'm supposed to do with this thing. Yeah. Well, it didn't just renumber things, the second amended complaint. It does make changes. It changes class definitions. It narrows forms of relief. It adds allegations at various points. So there are substantive differences. The second point I would make, though, on that, Your Honor, is that Falk said that even if there are just minor differences between the two forms of the complaints, that doesn't get rid of the mootness issue. The fact is that the filing of that second amended complaint supersedes the first amended complaint. So what are we supposed to consider? Yeah. To continue, though, the point, the discussion we were having just a moment ago, turn to standing. Let's assume there was a lack of standing. Well, Jewell v. National Security Agency out of this court says that even when you dismiss for standing, it's subject to the normal rule that you should generally allow leave to amend unless amendment would be ... Now, isn't that contrary to what we said in Morongo? No, it is not. Morongo was a case where the district court had assumed that jurisdiction existed all the way through the district court proceedings. It even reached a decision on the merits. It granted leave to amend, not because it had found a lack of jurisdiction, but because it was granting leave for a party to add a claim in interpleader to the funds at issue. And so what Morongo said was, because jurisdiction was lacking all along, the district court didn't have authority to issue a decision on the merits or grant that leave to amend. It was not addressing what you do when you dismiss based on lack of jurisdiction, or more properly, it wasn't addressing what you do when you dismiss based on lack of standing or based on younger abstention principles. And that, in Morongo, they cite two authorities for that. The first is a Wright, Miller, and Cooper excerpt that is from their chapter on 1404A transfers, and the statement about if there's jurisdiction lacking, you don't do anything, that was made, if you see the entire quote, it was made in the context of you can't issue a 1404A transfer if the court lacks jurisdiction. Of course, that's true. The other one was a decision where the district court had ordered the parties to either stipulate to the facts or to file an answer. So again, not dealing with the situation that we have here. So unfortunately, I think the appropriate answer here is that this appeal is moot. But I'm glad to answer any other questions the court may have on that. It's odd because that means the relief for your clients and class just gets delayed for heaven knows how long. I have some trouble understanding how that serves your client. Your Honor, frankly, plaintiffs don't like it either. Plaintiffs would rather proceed with getting these issues resolved. But we did feel compelled to raise this issue, and I think it's hard to have a discussion about this case and the fact that you're dealing with both a First Amendment complaint and a Second Amendment complaint without dealing with it. So if I thought that there was a redressability problem, not a younger problem, but a redressability problem or a problem under O'Shea v. Littleton, Rizzo v. Goode, those would go to Article 3 concerns, and therefore what? The SAC is not valid? Not necessarily. I think it so much depends on what is the reason why your Honor in that hypothetical would find that O'Shea applied. It might be that there was some aspect of some injunctive remedy that the court imagined that they thought involved an ongoing audit of the state court proceedings. To be very clear, we're not seeking an ongoing audit. We're not seeking even an injunction against the State Dependency Court proceedings. But let's just engage in that hypothetical exercise. Well, then the court could grant leave to amend, and in the Second Amendment complaint, the plaintiffs could narrow their claim to avoid that issue that creates the Rizzo problem. So that's, I think, that's the intention. Okay, but that now would require you to file a different amended complaint than the one that you've already filed? Well, I'm engaging, sorry, I was engaging with your hypothetical on the assumption that the district court in this case, in this order that's up on appeal, had come out the other way on something like Rizzo. I'd like to take you to the merits if I can. So let me tell you that I have read the complaint, the First Amendment complaint, a number of times. It's very well written, but it is written at a very, very high level of abstraction. And I have a very difficult time understanding what precisely it is that you want. You want injustices cured, but I'm not exactly sure I know what any of this is going to look like. So I need you to tell me why isn't this an ongoing audit of the foster care system in Los Angeles? Sure. So to begin with, there's, as you pointed out, there's an ADA and 504 claim. One of the key arguments that we make in the complaint is that the county's Department of Children and Family Services has a practice of screening out applications for transitional housing from youth who have mental health disabilities. That includes... And is this a policy of the county? It's a practice of the county. But not a policy? How much is enshrined in a written policy, I think, is subject to discovery. Okay. And why can't that be cured on a case-by-case basis in a dependency proceeding? Well, in part because youth don't even know whether they have been accepted or rejected from a position. That's another problematic part of the county's procedures, and this goes to the procedural due process claim. Youth submit applications to DCFS and then learn months later that DCFS never even submitted their applications. So there's that difficulty. They don't know. There's the difficulty of not being able to see across different cases to see whether there's a pattern of discrimination occurring. You cannot do that in a dependency court case because discovery is limited to the individual child before the court. But the point I would make, Your Honor, about the systemic remedies here, I think, is really critical. It's a point that the Fourth Circuit made in the Jonathan R. case. It's a point that Judge Thorne and Judge Henry make very effectively in their amicus brief. When you're talking about systemic problems like this, you cannot solve them on a case-by-case basis. If you go to the dependency court judge and say, I don't have a placement or I need a placement, and the dependency court judge tries to order a placement, they're likely to do so based on a best-efforts approach of the county because there is a waiting list. The county has failed to sustain sufficient . . . Okay. All right. So if it can't be done by the court, what is it you expect the district court to do? The district court . . . If a dependency court can't address this, what is the district court going to do? Well, the dependency court can't for structural reasons. For example, it can't entertain class actions. So it can't grant system-wide relief. And by the way, the . . . Well, let me get to your question, then I want to come back to another issue if I could. The district court could, for example, set a requirement that the county develop sufficient number of placements to deal with this population. That would not in any way interfere . . . And why doesn't that involve third parties who are not before the court? The county could provide those placements itself. You mean build its own housing? The county could run its own housing. Okay. Doesn't that require . . . Wouldn't that require then a budget allocation? That would be beyond the district court's authority, wouldn't it? No. There is no absolute rule against that. The Supreme Court has said over and over again that it can be the case that an incidental impact of injunctive relief is . . . That strikes me. If you're asking . . . If you're going to order the county to provide housing for . . . You've got classes of several hundred to several thousand. We're creating whole dormitories. These are entire campuses. That may involve easily hundreds of millions of dollars. That's not an incidental impact. And yet, the parties that would have to provide that money are not before the district court. Well, the county is before the district court. The county is a defendant in this case. And the other point I would just make is that . . . I mean, consider, for example, Brown versus Plata, where the Supreme Court affirmed an order requiring California to dramatically reduce its prison population . . . overcrowding problem. In that case . . . Yeah. You've got an Eighth Amendment problem there in Brown. That just strikes me as a very, very different situation. Well, we also have some constitutional issues here as well. But, what I was speaking to was the challenge of . . . Injunctions having an effect on the expenditure of funds. That clearly was true in Brown versus Plata. It wasn't just an incidental impact. It could have required a massive expenditure of funds on prison populations. And the Supreme Court has said, you know, lack of funding is not a justification for violating people's constitutional rights. One thing that they could have done in Brown versus Plata is simply let people out. They could grant much . . . and they did. I mean, that was . . . they granted parole in order to reduce the size of the prison population. So, California had some options. It wasn't clear that they had to do that. Now, I mean, the option here is that California could simply say, won't you get to be 16? We're just no longer going to take care of you. And that would solve the funding problem. Well, I mean, there are . . . Which doesn't seem like . . . which seems like that would be counterproductive to everything you're trying to do. Well, I agree. The county, you know, could improve its licensing practices so that it makes it . . . it streamlines the licensing process so that it's easier for providers to sign up. It doesn't take months on end or years on end to make it through the licensing process. And the district court could supervise that or just simply order them to streamline the processing? Well, I imagine that the court would start by issuing an order that would require them to achieve a certain number of placements and would give the state and local governments flexibility in how they achieve that, which is what the district court has recommended. And is the licensing just purely at the county level or does that also implicate some state baseline requirements? It's . . . the county certifies at the county level and then the state performs the licensing function. I'll just note that those state defendants who perform the licensing function are also defendants in this case, so they are not third parties in the sense that has been discussed. I'm still trying to figure out as you're describing all of this how this does not fall within a general rubric of an ongoing audit. That is, you're asking the district court to reform all of this and it's going to supervise it. It's going to have to supervise. It's going to get reports. It's going to need to know what California has done. It's going to order California to change its processes. That strikes me as a pretty breathtaking undertaking. Well, I think it's that ongoing audit phraseology comes from O'Shea, right? And I admit it's a very, very high level of abstraction. O'Shea's different, so is Rizzo versus Goode. I have the same frustration with the Supreme Court's phrase as I do with your complaint. They are both written at very, very high levels of abstraction and I'm trying to work down that ladder and I don't know where to go. Fair point. As you say, O'Shea and Rizzo are very different situations from what is at issue here. And it is not uncommon for federal district courts that issue injunctive relief when state and local governments violate federal law to engage in ongoing monitoring. But I think there's a gross overstatement of the amount of supervision that's involved here. We're talking about things like ending discrimination in the way that the county executive branch agencies perform their functions. We're talking about providing notice and due process to these youth so that they don't have this frustration, I mean that's putting it lightly, of filling out applications only to learn months later that those applications were never submitted. They don't have the frustration of telling DCFS that they wanted to accept a spot only to learn that DCFS never informed the service provider that they wanted that spot and they lost it as a result. So there are a number of fairly straightforward fixes here. We haven't talked about Medicaid, but the federal government, but the states and localities have an affirmative obligation under the Medicaid Act to provide Medicaid services in a reasonably timely manner. This court recognized that in the KDA decision. The named plaintiffs have alleged that they are. Is there any federal agency that's responsible for monitoring this in order to ensure that California is providing all of the rights that it has agreed to do so under Medicare? There is the Federal Centers for Medicare and Medicaid. I don't know, Your Honor, the details of how involved they get in examining the provision of services to a target population like this. I just don't know. But anyway, the point is, and one thing I would also say, there's an important decision out of this court, the BK v. Snyder decision, that held foster youth who had brought claims under the Medicaid Act and seeking procedural due process based on a lack of placements. This court held those claims were redressable. The county only has one response to that, and it's in footnote three of their reply brief. They say, well, in that case, the plaintiffs were seeking relief on their individual behalf, the named plaintiffs were, whereas in this case, they are not. But that's simply not true. For each one of the claims, named plaintiffs have suffered the injuries, and a named plaintiff like Onyx G will benefit from the injunctive relief that will be given. Onyx G, for example, has multiple mental health conditions that qualify as serious disabilities. She requested mental health services from the county, but the county failed to provide those mental health services to her. An injunction that required them to provide mental health services to this population would redress those injuries. Counsel, do your individual clients have, for example, 1983 claims that they could bring? They may, Your Honor. I haven't thought about that question. This case was purely brought on an injunctive relief basis. Can you briefly address the Younger abstention and more of these sins? Yes, I'd be glad to. There's really three bases why Younger doesn't apply. I think the first and most basic one is we do not seek to enjoin any state dependency court proceeding. And the injunctive relief that I've described throughout the course of the argument would not in any way interrupt those proceedings, it wouldn't enjoin them. And remember, Amerisource Bergen says it needs to be an actual or effective injunction of the state dependency court proceedings. The mere potential for conflict isn't enough. Sprint says that the mere possibility that they could issue decisions on the same subject matter isn't enough. So no injunction, that's reason number one. Wouldn't the district court order essentially preempt the placement decision of the juvenile state court proceedings? No. Dependency court judges could go on approving the placements just as they always have at those six-month hearings. The district court wouldn't overturn those dependency court, wouldn't second-guess them. It simply would address the issues that the executive branch agencies have engaged in. Discriminating at the application stage, which is not something that the dependency courts are involved in. Providing procedural due process at the application stage and at the push-out stage, which is not something dependency courts are involved in. And so no, I don't think it would in any way interrupt. I'll just note there are two other reasons why Younger doesn't apply. I'd be glad to address them, but I see that I'm out of time. Thank you. Thank you. Your Honors, the operative pleading in this case is the first amended complaint. That is the complaint that exists because plaintiffs amended their original complaint as of right. After that point, no further amendments were allowed because the district court lacked jurisdiction. Morongo is clear. This court has reaffirmed the Morongo rule multiple times, including in Asker v. Newsom and the L.A. Alliance case, that if a court lacks jurisdiction to begin with, which is the allegation and the argument here before you, every one of its orders, including its order granting leave to amend, is a nullity. So you should treat the second amended complaint as not existing. The same way as if a plaintiff just unilaterally filed an amended complaint because they— Well, it's not unusual. If a motion to dismiss is granted by the district court or for that matter on appeal, there is commonly leave to amend if an amendment could address the problem. So I'm not entirely sure. I mean, you're true. If we decide, nope, there's just no jurisdiction here, yeah, that will end the matter, but then we don't have to worry about could the complaint be amended. So I'm not sure why you're emphasizing we're not supposed to look at the second amended complaint. I don't know that that really matters here. The reason is that the complaint cannot be amended to correct lack of jurisdiction. So the point is you're claiming there's a lack of jurisdiction. I'm not sure what the existence of the second amended complaint has to do with that. That's the point. We end up looking at the first amended complaint regardless. Talking about whether or not— No, that part's not true because if it's amendable to correct the problem, you have to consider is it amendable and the second amended complaint might shed light on that. Your point is that neither one of them solved the jurisdiction problem. No, Your Honor. Our point is you don't even get to the second amended complaint. No, that is simply not right. If the complaint could be amended to solve the jurisdiction problem, then it's common to grant leave to amend. If the second amended complaint is an exemplar of what could be done to amend and it does solve the problem, we're entitled to look at it, decide if it could solve the problem. What's wrong with that? Because the Supreme Court ruled in Newman v. Green that that is not permissible. If jurisdiction— We're entitled to consider whether an amendment to the complaint could solve the problem. Is that correct? No, Your Honor. So we have to dismiss no leave to amend, period? We tell district courts all the time they can't do that. If the issue is that the subject matter jurisdiction was lacking to begin with, then you don't even get to the second amended complaint because leave to amend was not permissible. Unless an amendment could solve the jurisdiction problem. And the only scenario where that is possible is if the amendment is solely as to pleading. With respect to whether or not there would need to be an ongoing audit of the juvenile court, that is clearly the case. And every single court of appeal, except for one that has addressed this issue, has found that there would need to be and that that requires younger abstention. The 7th, 8th, 10th, and 11th circuits have all considered this issue, and they said that regardless of whether or not you're directing relief specifically at the juvenile court, effectively a federal court would have to exercise oversight over the specific decisions made as to placements, as to medical services, and as to everything else in order to determine whether or not the relief that is granted is actually being complied with. Therefore, younger abstention is necessary. Thank you, Your Honor. Great. Thank you, everyone, for the helpful argument. The case is submitted, and we are adjourned. All rise. This court for this session stands adjourned.
judges: CLIFTON, BYBEE, LEE